IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY G.,[1]                                   6:20-cv-00769-BR

        Plaintiff,                        OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

SHERWOOD J. REESE
LUKE MOEN-JOHNSON
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401
(541) 434-6466

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**SARAH L. MARTIN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3705

       Attorneys for Defendant

**BROWN, Senior Judge.**

      Plaintiff Jeffrey G. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on February 3, 2017, alleging a disability onset date of September 17, 2016.  Tr. 157-58.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on December 12, 2018.  Tr. 25-61.  Plaintiff was

---

      [1] Citations to the official transcript of record filed by the Commissioner on October 16, 2020, are referred to as "Tr."

2 - OPINION AND ORDER

represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 14, 2019, in which he found Plaintiff is not disabled, and, therefore, Plaintiff is not entitled to benefits.  Tr. 13-24.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on March 18, 2020, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on January 20, 1971, and was 47 years old at the time of the hearing.  Tr. 157.  Plaintiff "has at least a high school education."  Tr. 19.  Plaintiff has past relevant work experience as a user-support analyst, computer-systems hardware analyst, and user-support analyst supervisor.  Tr. 18.

Plaintiff alleges disability due to vestibular neuronitis. Tr. 157.

Except when noted Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 17-18.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885

6 - OPINION AND ORDER

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity after his September 17, 2016, alleged onset date. Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of obesity, headaches, and "vertigo/possible

vestibular neuronitis." Tr. 15.  The ALJ found Plaintiff's sleep apnea is nonsevere.  Tr. 15.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 18.  The ALJ found Plaintiff has the RFC to perform sedentary work except he can

> occasionally climb ramps and stairs but never
> climb ladders, ropes, or scaffolds.  [Plaintiff]
> can occasionally balance, kneel, crouch, and
> stoop.  He can never crawl.  He can have no
> exposure to vibration and hazards such as
> dangerous machinery and unprotected heights.

Tr. 16.

At Step Four the ALJ found Plaintiff can perform his past relevant work.  Tr. 18.

In the alternative, the ALJ found at Step Five that Plaintiff can perform other work that exists in significant numbers in the national economy.  Tr. 20.  Accordingly, the ALJ concluded Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) partially rejected the lay-witness statement of Plaintiff's wife, Jocelyn G.; (3) partially rejected the opinion of Christina Capannolo, D.O., treating physician; and (4) posed an incomplete hypothetical to the VE.

8 - OPINION AND ORDER

I.   **The ALJ did not err when he partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(same).

9 - OPINION AND ORDER

General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that he suffered permanent nerve damage caused by a viral inner-ear infection. Tr. 37. Plaintiff stated he suffers from vertigo as a result of his condition, and he gets dizzy and nauseous when he walks or "sits up and tries to read at the same time." Plaintiff testified when he is "reading text" and he gets vertigo, his eye starts to twitch or to vibrate and "the text will vibrate . . . when [he is] trying to focus on it." Tr. 40. The ALJ asked Plaintiff whether he could "do a sit-down type of job like an assembler job where you're not looking at a computer screen or anything that's going to be moving or distorting." Tr. 42. Plaintiff responded he "could probably do that a couple hours at a time" but not full-time because "on [a] daily basis . . . I'm up for a couple of hours, and I'm laying down and taking a nap." Tr. 43. Plaintiff noted he takes "two to three naps a day on most days" that last "half an hour to two hours usually" because he is tired. Tr. 49-50. Plaintiff stated he has to do things at a "much slower speed" because when he "does things too quickly . . . it triggers the spin." Tr. 44. Plaintiff noted "even just

. . . turning [his] head sometimes" triggers vertigo.  Tr. 44.
Plaintiff testified he is able to drive because he does that
sitting down and "most of the driving [he] do[es] is on back
roads and slow.  The farthest [he] ha[s] driven since [the onset
of his symptoms] is . . . 24 miles" to Eugene or Albany, Oregon.
Tr. 44-45.

Plaintiff noted his medical providers have told him that the
treatment for vestibular neuronitis is physical therapy.
Plaintiff, however, attended eight physical-therapy sessions, and
they "seemed to only make [his symptoms] worse."  Tr. 45.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms," but Plaintiff's "statements concerning the intensity,
persistence and limiting effects of [his] symptoms are not
entirely consistent with the medical evidence and other evidence
in the record."  Tr. 16.  The ALJ noted although Plaintiff
testified he is unable to turn his head without experiencing
vertigo at times, he is able to drive, which requires frequent
head movement.  In addition, Plaintiff stated he often suffers
dizziness and nausea when he attempts to use computers, but on
his February 21, 2017, Adult Function Report he stated he shops
on Amazon.com and checks his email daily.  The ALJ also noted the
medical record does not support the level of limitation Plaintiff
indicated and that Plaintiff received conservative treatment that

resulted in improvements in his condition.  For example, Plaintiff reported to Kyle Gambrell, D.O., treating physician, on October 12, 2016, that he initially experienced a sensation of the room "spinning," but this resolved "after a few days." Tr. 270.  Plaintiff noted when he "turns over in bed . . . he will experience a room spinning sensation which will last minutes to seconds before resolving."  Tr. 207.  Dr. Gambrell performed the Epley maneuver on Plaintiff twice and reported Plaintiff's symptoms improved.  Plaintiff was advised how to do the Epley maneuver himself at home.  On January 27, 2017, Plaintiff reported to Stephan Ames, M.D., treating physician, that he "still feels dizzy at times," he is "tired during the day[,] and has been taking naps every day."  Tr. 293.  Dr. Ames assessed Plaintiff with benign paroxysmal positional vertigo of the left ear.  Plaintiff noted the he did the Epley maneuver "a couple of . . . times at home" and found it helpful, but "he still has problems with dizziness."  Tr. 295.  Dr. Ames recommended Plaintiff try a "half somersault maneuver," noted Plaintiff might "have to repeat it several times before it works well," and stated he was "not sure if [Plaintiff] will qualify for SSI at this point."  Tr. 296.  On February 3, 2017, Plaintiff reported to Dr. Ames that he was not experiencing any dizziness.  Dr. Ames recommended Plaintiff "exercise at least 3 times a week for 30 minutes."  Tr. 292.  On March 6, 2017, Plaintiff was seen by Mark

12 - OPINION AND ORDER

Lewis for physical therapy to treat benign paroxysmal vertigo.
Lewis tested Plaintiff for vestibular hypofunction while
Plaintiff's "eyes were closed, with passive cervical rotation to
R and L for 30 seconds.  Testing was negative, with no dizziness
or nystagmus following the 30 seconds."  Tr. 333.  Lewis also
performed "VOR testing laterally and vertically, with more
dizziness nodding up and down while maintaining focus on
[Lewis's] finger in front of [Plaintiff]."  Tr. 333.  Lewis
stated Plaintiff's rehabilitation potential was good.  On
March 10, 2017, Lewis reported Plaintiff had "lessened nystagmus
with initial dix-hallpike[2] . . . compared to [March 6, 2017,] and
was educated on how to perform it on his own at home."  Tr. 335.

On October 23, 2017, Ryan Stevens, M.D., treating
otolaryngologist, examined Plaintiff and recommended Plaintiff
obtain an MRI, undergo a vertigo study, and have physical
therapy.  Tr. 338.  On November 17, 2017, Deborah Dresler,
treating physical therapist, noted Plaintiff's "symptoms and exam
are consistent with poorly adapted L vestibular neuronitis" and
Plaintiff would "benefit from physical therapy to improve visual
motor function, COG orientation, balance and gait stability and
sensory integration."  Tr. 355.  Dresler noted Plaintiff's

---

[2] "Doctors use the Dix-Hallpike test (sometimes called the
Dix-Hallpike maneuver) to check for a common type of vertigo
called benign paroxysmal positional vertigo, or BPPV."
https://www.webmd.com/brain/dix-hallpike-test-vertigo.

"prognosis to achieve goals" was "excellent." Tr. 355. On November 20, 2017, Evan deSzoke, treating physical therapist, assessed Plaintiff with "remarkably impaired integration of vestibular information for almost all functional tasks requiring head movement." Tr. 388. deSzoke, however, also noted when Plaintiff "gets symptoms, they seem to be able to settle quickly, even with quite intense subjectively reported symptoms." Tr. 388. deSzoke concluded "[c]ompensation [for Plaintiff's symptoms] may take some time due to his prolonged period of restriction of activity and poor dosing of activity but he has potential for improvement. He continues to benefit from PT to address deficits in context of his goals." Tr. 388. On November 27, 2017, deSzoke noted Plaintiff was "exhibiting improved vestibular integration. . . . He admits he has been predisposed to motion sensitivity for years prior to onset of vertigo." Tr. 390. Once again deSzoke noted "[c]ompensation [for Plaintiff's symptoms] may take some time due to his prolonged period of restriction of activity and poor dosing of activity but he has potential for improvement." Tr. 390.

On December 22, 2017, Plaintiff reported to Dr. Stevens that he was unable to get an MRI because "there is a metal fragment in his finger from [a] motor vehicle accident." Tr. 336. Dr. Stevens noted Plaintiff "has gone through 4 cycles of physical therapy. He is learning. We gave him additional

. . .[,] advanced" exercises.  Tr. 336.  Dr. Stevens recommended
Plaintiff get a CT Scan in an effort to determine his condition.
Plaintiff underwent a CT Scan on January 16, 2018, and the
results were "unremarkable."  Tr. 340.  In June 2018 Christina
Capannolo, D.O., treating osteopath, noted Plaintiff was walking
for exercise and "feels he will be more active once [his]
allergies are calmer."  Tr. 398.  Dr. Capannolo "[d]iscussed
[with Plaintiff] that [a] recumbent bike would be great for him
with his balance issues."  Tr. 398.  On July 13, 2018, Plaintiff
reported to Dr. Capannolo that he was "motivated to get in shape
for hunting season.  He is walking about 15 minutes 3x a week
now. . . .  Goals are to start working outside in intervals.
This will be 1-2 hours total.  15 minutes on and 5-10 minutes
off."  Tr. 400.  Plaintiff advised Dr. Capannolo that he intended
to use his "under-desk" exercise bike four times a week for 30-60
minutes.

        The Court concludes on this record that the ALJ did not err
when he partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

**II.  The ALJ did not err when he partially rejected the lay-
      witness statements of Plaintiff's wife, Jocelyn G.**

        Plaintiff alleges the ALJ erred when he gave only "partial
weight" to the statements of Plaintiff's wife, Jocelyn G.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

On November 28, 2018, Jocelyn G. completed a letter in which she stated Plaintiff "could barely stand or walk" when he first experienced vertigo, and "he spent the first week [after he came home] in bed and needing help to walk around the house and to drive to medical appointments." Tr. 264. Jocelyn G. noted Plaintiff's "attempts at physical work around the property [since his nerve damage] are shorter in duration and results [*sic*] in fatigue," he "requires naps to recover" after "brief activities," he uses a cane or walking stick "due to outdoor falls," and his "gait and standing positions are wider than normal to help stabilize his body." Tr. 264.

The ALJ gave partial weight to Jocelyn G.'s statements. As noted, Jocelyn G's statements are substantially similar to

16 - OPINION AND ORDER

Plaintiff's testimony.  The Court has already concluded the ALJ did not err when he partially rejected Plaintiff's testimony because the ALJ provided support for his opinion based on substantial evidence in the record.  The Court also concludes on the same basis that the ALJ did not err when he partially rejected Jocelyn G.'s statements.

**III.  The ALJ did not err when he partially rejected the opinion of Christina Capannolo, D.O., treating physician.**

Plaintiff alleges the ALJ erred when he partially rejected the opinion of Christina Capannolo, D.O., treating physician.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When

17 - OPINION AND ORDER

a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On November 28, 2018, Dr. Capannolo completed a statement regarding whether Plaintiff "would be able to engage in full-time employment, which includes an eight-hour per day job, with normal breaks, five days a week, on a sustained basis, and without missing more than two days per month from work." Tr. 413. Dr. Capannolo stated she "did not have a definite answer to [that] question," but noted "some limitations [Plaintiff] has due to his medical condition." Tr. 413. Dr. Capannolo stated Plaintiff's vertigo "affect[s] his balance[,] . . . cause[s] significant dizziness, . . . [and] make[s] it difficult for him to work because any time he needs to focus on the task at hand, such as looking at a computer screen, reading or writing, he [cannot] do it for very long without becoming very dizzy and disoriented." Tr. 413. Dr. Capannolo stated Plaintiff "has tried several rounds of physical therapy which have provided some minimal relief. He often walks with a walking stick to help him avoid falls. Anything he does he has to do at a much slower

speed."  Tr. 413.

The ALJ gave Dr. Capannolo's opinion "little weight" on the grounds that it was contradicted by Plaintiff's activities and the medical record.  Specifically, the ALJ noted Plaintiff reported he was able to drive, which requires frequent head movement; that he shops on Amazon.com; and that he checks his email daily.  In addition, the ALJ noted the record reflects Plaintiff's dizziness improved with treatment, and his occasional bouts of vertigo did not pose a serious functional barrier.  For example, on October 12, 2016, Plaintiff reported to Dr. Gambrell that "when he turns over in bed . . . he will experience a room spinning sensation which will last minutes to seconds before resolving."  Tr. 270.  On February 3, 2017, Plaintiff reported to Dr. Ames that he was not experiencing any dizziness and that he had a "normal gait and stance."  Tr. 285.  In addition, the ALJ pointed out that Dr. Capannolo's treatment notes did not include complaints of vertigo, fatigue, or physical limitations nor do they include any abnormal findings on examination.  *See, e.g.,* Tr. 394-95, 396-98, 399-400.

The ALJ also noted Dr. Capannolo's opinion was contradicted by the opinions of Martin Kehrli, M.D., and Peter Bernardo, M.D., reviewing physicians, who opined Plaintiff could perform medium work "with heights and hazards limits."  Tr. 80.

On this record the Court concludes the ALJ did not err when

19 - OPINION AND ORDER

he gave little weight to Dr. Capannolo's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**IV.  The ALJ did not pose an incomplete hypothetical to the VE.**

As noted, Plaintiff alleges the ALJ erred when he failed to include all of Plaintiff's limitations in his hypothetical to the VE.  Specifically, Plaintiff alleges the ALJ failed to include limitations identified by Plaintiff in his testimony and by Dr. Capannolo in her opinion.

The Court has already concluded the ALJ did not err when he partially rejected the limitations asserted by Plaintiff and Dr. Capannolo.  On this record, therefore, the Court also concludes the ALJ did not err by not including those limitations in his hypothetical to the VE.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 12th day of April, 2021.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge

20 – OPINION AND ORDER